

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA SANCHEZ, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MAGGY LONDON INTERNATIONAL LTD., a New York Corporation d/b/a WWW.MAGGYLONDON.COM,<br><br>Defendant. | Case No.: 3:25-cv-02107-H-JLB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>[Doc. No. 12] |

On August 7, 2025, Plaintiff filed a first amended class action complaint ("FAC") against Defendant Maggy London International Ltd. ("Maggy London") in the Superior Court of California, County of San Diego. (Doc. No. 1-2, FAC.) Plaintiff asserts Defendant violated California false advertising and unfair competition laws by its allegedly fraudulent online strikethrough pricing. (Doc. No. 1-2, FAC.) On September 30, 2025, Defendant filed a motion to compel arbitration. (Doc. No. 12.) On November 3, 2025, the parties appeared telephonically before the Court for a hearing on the motion. (Doc. No. 18.) For the reasons set forth below, the Court **DENIES** Defendant's motion.

/ / /

/ / /

/ / /

## Background

As alleged in the FAC and Answer, Plaintiff is a citizen of California and Defendant is a New York-based online retailer whose e-commerce website is accessible nationwide. (Doc. No. 1-2, ¶¶ 4–5; Doc. No. 8, ¶ 6.) On May 13, 2025, Plaintiff purchased "Adina by Maggy London Dress" ("Product") from Defendant for $138.00. (Doc. No. 1-2, ¶ 8.) Defendant listed this sales price next to a strikethrough price of $168.00, which Plaintiff alleges was not the "prevailing market price" in the 90 days preceding the purchase. (Doc. No. 1-2, ¶¶ 8–9.) Plaintiff alleges that in the 90 days before her purchase, Defendant "was offering the exact same Product with a similar 'phantom discount.'" (Doc. No. 1-2, ¶ 10.) Plaintiff further alleges that phantom discounts like that of the Product are used on many of Defendant's other products. (Doc. No. 1-2, ¶¶ 11–15.)

Plaintiff navigated through Defendant's check-out process to complete her purchase. (Doc. No. 12-1, Lefkowitz Decl., ¶ 5.) Defendant's website displayed the following to Plaintiff on the final step of check-out:



(Doc. No. 12-2, Lefkowitz Decl., Ex. A.)  Plaintiff filled in her "contact information, shipping address, and shipping method." (Doc. No. 12-1, ¶ 6.)  The Maggy London website presented Plaintiff with a "Pay now" button with the words "Refund policy," "Privacy policy," and "Terms of service" beneath in blue, underlined font. (Doc. No. 12-2.)  The three phrases were hyperlinks that link to each of the three policies. (Doc. No. 12-1, ¶ 8.)  But nothing in or around the "Pay now" button compelled Plaintiff to adopt and review the terms of service.  The terms of service included an arbitration clause in Section 19, which appeared on the date Plaintiff purchased the Product as:

> By using or purchasing Maggy London products or services, you agree that any controversy, claim, action, or dispute between you and Maggy London arising out of or relating to: (a) these Terms, or the breach thereof; or (b) your access to or use of Maggy London's website or the services or the materials; or (c) any alleged violation of any federal or state or local law, statute or ordinance (each such controversy or claim, a "Claim"), shall be resolved exclusively through binding individual arbitration administered by the American Arbitration Association in accordance with its applicable rules.

(Doc. No. 12-3, Lefkowitz Decl., Ex. B.)  The terms of service also outline the procedures by which arbitration will be governed:

> Claims shall be heard by a single arbitrator. Arbitrations shall be held in [County, State, USA], but the parties may choose whether to appear in person, by phone, or through the submission of documents. The arbitration shall be governed by the Federal Arbitration Act ("FAA") and by the internal laws of the [State], without regard to conflicts of laws principles. Any disputes in this regard shall be resolved exclusively by the arbitrator. If, but only if, the arbitrator determines the FAA does not apply, New York law governing arbitration agreements will apply. All disputes with respect to whether the foregoing mutual arbitration provisions are unenforceable, unconscionable, applicable, valid, void or voidable shall be determined exclusively by an arbitrator, and not by any court.

(Doc. No. 12-3, Lefkowitz Decl., Ex. B.)  Finally, Section 19 of the terms of service concludes with a class action waiver provision:

> You and Maggy London agree that you may bring or participate in Claims against Maggy London only in your respective individual capacity, and not as

a plaintiff or class member in any purported class, consolidated, or representative proceeding. Unless both you and Maggy London agree otherwise in writing, the arbitrator may not consolidate or join the claims of other persons or parties who may be similarly situated and may not otherwise preside over any form of a representative or class proceeding. Notwithstanding any other clause contained in this Agreement, any Claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.

On July 7, 2025, Plaintiff commenced this action against Defendant in the Superior Court of California, County of San Diego, asserting violations of California false advertising and unfair competition laws. (Doc. No. 1.) On August 7, 2025, Plaintiff filed a FAC against Defendant. (Doc. No. 1-2, FAC.) On August 15, 2025, Defendant removed the action to federal court to proceed on diversity jurisdiction. (Doc. No. 1; Doc. No. 10.)

On September 30, 2025, Defendant filed a motion to compel arbitration on all claims in the complaint. (Doc. No. 12.) Defendant argues that Plaintiff's claims are subject to the arbitration and class action waiver provisions located in the terms of service link displayed at check-out. (Doc. No. 12.) Defendant also argues that the threshold issues of arbitrability should be decided by the arbitrator. (Doc. No. 12.) On October 6, 2025, Plaintiff filed a response in opposition to the motion, arguing that Defendant failed to meet its burden of demonstrating that Plaintiff had inquiry notice of the arbitration provision and unambiguously manifested her assent. (Doc. No. 13.) On December 13, 2025, Defendant filed its reply to Plaintiff's opposition, contending that the terms of service link displayed at check-out provided inquiry notice because it was sufficiently conspicuous. (Doc. No. 14.)

On November 3, 2025, the parties appeared telephonically before the Court for a hearing on the motion. (Doc. No. 18.) Scott J. Ferrell appeared on behalf of Plaintiff and Paul Hubschman Aloe and Jacob Reichman appeared on behalf of Defendant. (Doc. No. 18.) For the reasons set forth below, the Court **DENIES** Defendant's motion.

## Discussion

### I. Legal Standard

The Federal Arbitration Act ("FAA") "requires district courts to compel arbitration of claims covered by an enforceable arbitration agreement." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022); *see* 9 U.S.C. § 3. To determine whether the arbitration agreement is enforceable, the FAA requires the moving party to show "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *see Berman*, 30 F.4th at 855. The standard on a motion to compel arbitration is akin to that of a motion for summary judgment. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). As such, the Court must draw all reasonable inferences in favor of the non-movant. *See Lopez v. Dave, Inc.*, 2023 WL 8594393, at *1 (9th Cir. Dec. 12, 2023).

Courts apply state-law principles of contract formation to determine whether an arbitration agreement is valid. *Berman*, 30 F.4th at 855 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The Ninth Circuit has made clear that federal courts sitting in diversity look to the law of the forum state when making choice of law determinations. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citing *Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008) (per curiam)). California law dictates that the parties' choice of law governs unless Section 187(2) of the Restatement (Second) of Conflict of Laws dictates a different result. *Hoffman*, 546 F.3d at 1082–83 (citing *Discover Bank v. Superior Court*, 36 Cal.4th 148, 173 (2005)). Because the parties agree that California law governs, the Court applies California law to assess whether the arbitration agreement is valid.

### II. The Arbitration Agreement's Validity

"To form a contract under [] California law, the parties must manifest their mutual assent to the terms of the agreement." *Berman*, 30 F.4th at 855 (citing *Nguyen*, 763 F.3d at 1175); *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 29 (2d Cir. 2002)

(applying California law)).  With respect to online agreements, "[u]nless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856 (citing *Nguyen*, 763 F.3d at 1173).

### A. Reasonably Conspicuous Notice

Defendant is correct in its briefing that the font, color, placement, and underline of "Terms of service" is reasonably conspicuous in this context.  Defendant submitted a declaration that displays the final page of the checkout process as it would have appeared to Plaintiff on the date of her order:



(Doc. No. 12-3, Lefkowitz Decl., Ex. A.)  The terms of service hyperlink was reasonably conspicuous such that a court "can fairly assume that a reasonably prudent Internet user would have seen it. *Berman*, 30 F.4th at 856 (citing *Nguyen*, 763 F.3d at 1177).  The font size, light blue color on a white background, underlining, and placement

immediately below the "Pay now" button make the terms of service both "clearly 'legible to the naked eye'" and indicative of a hyperlink. *Patrick v. Running Warehouse, LLC*, 2022 WL 10584136, at *5 (C.D. Cal. Oct. 18, 2022), aff'd, 93 F.4th 468 (9th Cir. 2024); *see Dohrmann v. Intuit, Inc.*, 823 Fed.Appx. 482, 854 (9th Cir. 2020) (finding terms of use hyperlink to be conspicuous in part because it was "located directly below the sign-in button" and where overall webpage was "relatively uncluttered").

### B. Unambiguous Manifestation of Assent

Defendant must demonstrate that Plaintiff took some action to unambiguously manifest her assent. The Ninth Circuit has made clear that a "user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857 (citing *Specht*, 306 F.3d at 29–30). Further, "the notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id.* at 858. The facts here resemble that of *Nguyen*, in which the Ninth Circuit explicitly noted that "even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Nguyen*, 763 F.3d at 1179. In this case, the "Pay now" button was not accompanied with a prompt or advisal that Plaintiff's purchase would legally bind her. Defendant's checkout process was therefore, under Ninth Circuit case law, insufficient. Defendant's lack of advisal language meant Plaintiff did not have the inquiry notice required to subsequently manifest assent by clicking "Pay now." While Plaintiff acted in placing the order, that action cannot reasonably be construed to have manifested assent to the terms of service located below.

Defendant's points regarding Plaintiff's actual notice are well taken. A reasonable person in a similar position to that of Plaintiff would likely have actual notice with a "Pay

now" button followed by a terms of service hyperlink.[1]  But Plaintiff's role as a tester does not alone establish actual notice.  And for inquiry notice, Ninth Circuit case law demands more than a conspicuous hyperlink to terms of service.  *See Nguyen*, 763 F.3d at 1178–79 (finding user had no inquiry notice because the website lacked a sufficient advisal); *Berman*, 30 F.4th at 858–59 (same); *Godun v. JustAnswer LLC*, 135 F.4th 699, 712–13 (9th Cir. 2025) (same); *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1159 (9th Cir. 2025) (same); *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) (same); *see also Patrick*, 93 F.4th at 477 (finding user had inquiry notice because of website's explicit advisal that proceeding would bind user to terms of service); *Keebaugh v. Warner Bros. Entertainment Inc.*, 100 F.4th 1005, 1018 (9th Cir. 2024) (same); *Oberstein v. Live Nation Entertainment, Inc.*, 60 F.4th 505, 516–17 (9th Cir. 2023) (same); *Dohrmann*, 823 Fed.Appx. at 484 (same); *Lee v. Ticketmaster L.L.C.*, 817 Fed.Appx. 393, 394–95 (9th Cir. 2020) (same).

Binding precedent requires that an advisal accompany the terms of service link such that a user knows that the user is manifesting assent to legal terms.  Such "'explicit textual notice that continued use will act as a manifestation of the user's intent to be bound' is critical to the enforceability of any browsewrap-type agreement." *Berman*, 30 F.4th at 857–58 (quoting *Nguyen*, 763 F.3d at 1177).  A link to the terms of service, absent more, is not enough.

/ / /

/ / /

/ / /

---

[1] Defendant asserts that Plaintiff is a serial litigant with a history of bringing identical and similar claims.  (Doc. No. 12 (citing *Sanchez v. Delta Galil USA, Inc.*, No. 3:25-cv-01963 (S.D. Cal.); *Sanchez v. Marriott Int'l, Inc.*, 2024 WL 3598821 (C.D. Cal. July 31, 2024); *Sanchez v. Glasscanopy, Inc.*, 2025 WL 1213283 (Cal.Super. Feb. 28, 2025); *Sanchez v. Cars.com Inc.*, 2025 WL 487194 (Cal.Super. Jan. 27, 2025); *Sanchez v. Brinker International, Inc.*, No. 2:24-cv-05572 (C.D. Cal.); *Sanchez v. The Travelers Indemnity Co.*, No. 2:25-cv-00063 (C.D. Cal.); *Sanchez v. Organifi, LLC, et al.*, No. 2:25-cv-04912 (C.D. Cal.); *Sanchez v. National Instruments Corp. (ni.com)*, No. 23STCV31160 (L.A. Super. Ct.); *Sanchez v. True Legacy Human Resources, Inc.*, No. 24STCV17429 (L.A. Super. Ct.)).)

## Conclusion

Because Defendant has failed to meet its burden of establishing the validity of the arbitration agreement, the Court **DENIES** Defendant's motion to compel arbitration. The Early Neutral Evaluation and Case Management Conference remain set for December 3, 2025, before the magistrate judge.

**IT IS SO ORDERED.**

DATED: November 6, 2025

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT